**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

**KEVIN J. SULLIVAN,** an individual

    Plaintiff,

vs.                                                                                      CASE NO: _____

                                                                                              (Jury Trial Requested by Plaintiff)

**THOMAS J. VILSACK,**
**SECRETARY OF AGRICULTURE**
(*in his official capacity as SECRETARY,*
*UNITED STATES DEPARTMENT*
*OF AGRICULTURE*)

    Defendant.

*************************************************************************

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW, the Plaintiff, KEVIN J. SULLIVAN, by and through his undersigned counsel, Cole Sullivan and The Valente Law Group, who files this Complaint and Demand for Jury Trial against Defendant THOMAS J. VILSACK, SECRETARY OF AGRICULTURE, in his official capacity as SECRETARY, UNITED STATES DEPARTMENT OF AGRICULTURE, and, for reasons therefore, alleges and states as follows:

**PARTIES**

1. Plaintiff, Kevin J. Sullivan (hereinafter "Mr. Sullivan"), is currently a resident of Indian River County, Florida.  At all material times hereto, Mr. Sullivan was a resident of Alachua County, Florida and was working in Alachua County, Florida.

2. Defendant, Thomas J. Vilsack, Secretary of Agriculture, in his official capacity as Secretary, United States Department of Agriculture, (hereinafter "Defendant"), has been organized

and existing under the laws of the United States of America and the State of Florida. At all material times hereto, Defendant was operating in Alachua County, Florida and was an "employer" as that term is used under the applicable laws identified below.

## JURISDICTION

3. This case is brought for discrimination in employment pursuant to 42 U.S.C. §2000e, *et seq.*, the American with Disabilities Act of 1990 [A.D.A.], as codified, 42 U.S.C. §12112, *et seq.*, the Age Discrimination in Employment Act of 1967, as codified, 42 U.S.C. §621, *et seq.,* and 42 U.S.C. §1981a and §1981b. Jurisdiction of this Court is invoked pursuant 28 U.S.C. §1331 (federal question jurisdiction), 28 U.S.C. §1343 (civil rights claim jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

4. This is an action involving claims which are, individually, in excess of Seventy Five Thousand Dollars ($75,000.00), exclusive of attorney's fees, costs and interest.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES (CONDITIONS PRECEDENT)

5. Mr. Sullivan filed his formal complaint of discrimination (assigned Case# FPAC-2021-00319) on May 19, 2021, after going through the requisite negotiated grievance procedure. Mr. Sullivan's *Complaint of Discrimination* is attached as Exhibit "A" and incorporated herein by reference.

6. A 354-page Report of Investigation was then authored by the Defendant and submitted on September 21, 2021.[1] Mr. Sullivan then timely requested a Final Agency Decision.

7. The Defendant rendered a Final Agency Decision on November 17, 2021. A copy of the *Final Agency Decision* is attached as Exhibit "B" and incorporated herein by reference.

---

[1] The 354-page report will not be attached as an Exhibit for confidentiality purposes, but will be produced to Defendant (although already in its possession) with Mr. Sullivan's initial discovery disclosures.

8. Pursuant to 29 C.F.R. § 1614.407, Mr. Sullivan must file this civil action within ninety (90) calendar days of the Final Agency Decision, which makes his deadline for filing this civil action February 15, 2022.

9. This instant action is timely filed, as it was submitted to this Court of competent jurisdiction[2] prior to the required deadline of February 15, 2022.

## STATEMENT OF THE ULTIMATE FACTS

10. Mr. Sullivan was born on March 1, 1960. He is currently 61 years old.

11. Mr. Sullivan joined the Natural Resources Conservation Service ("NRCS") on June 14, 1982.

12. Throughout his 39 years of service, Mr. Sullivan has served on numerous civil rights/equality panels, including the Federal Women's Program, the Disability Emphasis Program, and the National Civil Rights Committee. Throughout his service, up until the events at issue in this matter, Mr. Sullivan never had a documented issue with any supervisor and received superior/outstanding ratings on all his performance reviews for any position that he held.

13. In 2011, Mr. Sullivan was elevated to the GS-13 position of State Soil Scientist for the State of Washington. During his time in that position, Mr. Sullivan co-authored the position description of "State Soil Scientist" for the entire United States as part of the Defendant's restructuring of the Soil Program.

14. In 2018, Mr. Sullivan performed a lateral transfer to Florida, becoming the State Soil Scientist for the State of Florida. Mr. Sullivan performed all of his duties in this position, and all others held before it, without issue or complaint prior to June of 2020 (*approximately 38 years*).

---

[2] Alachua County, Florida is where Mr. Sullivan resided and was employed (specifically, 4500 NW 27th Ave, Building A, Gainesville, FL 32606) at all material times hereto, where the principal agent/employee of the Defendant resided and was employed (specifically, 4500 NW 27th Ave, Building A, Gainesville, FL 32606) at all material times hereto, and where the incidents that make up the basis of Mr. Sullivan's claims occurred.

15. Mr. Sullivan is disabled for the purposes of all legal definitions that require such designation under the claims alleged in this Complaint. Mr. Sullivan has a permanent disability due to injuries he has sustained working for the Defendant for 39 years. His injuries and disabilities are outlined in, and supported by, his medical records which were provided to the Defendant through the EEO process (*so they are known to the Defendant at the time of the filing of this Complaint*).[3]

16. In or around June of 2020, Juan Carlos Hernandez (hereinafter, "Mr. Hernandez") reported to duty as the State Conservationist of Florida, making Mr. Hernandez Mr. Sullivan's immediate supervisor.

17. Without a cordial greeting, Mr. Hernandez immediately inquired about the Mr. Sullivan's retirement status/age, as the first words Mr. Hernandez ever spoke to Mr. Sullivan after taking his new position as State Conservationist (and becoming Mr. Sullivan's direct supervisor), were "I heard you are eligible to retire…do you know when are you retiring? Let me know as soon as you decide."

18. Mr. Hernandez being aware of Mr. Sullivan's age and retirement eligibility, then initiated a series of illegal and unethical events to force Mr. Sullivan's retirement, so Mr. Hernandez could appoint his successor.

19. To simply name a few of these transgressions, prior to Mr. Hernandez taking his position as the State Conservationist, a full time GS-12 Wetland Specialist retired from her position. The full time GS-12 position was vacant, and the previous State Conservationist had agreed to make it a priority to replace this position with a new hire. In fact, this independent, full-time position was on the organizational flow charts as vacant for over a year after Mr. Hernandez

---

[3] Mr. Sullivan's medical records are withheld from this Complaint for HIPPA purposes but will be provided to Defendant (although already in its possession) in Mr. Sullivan's initial disclosures.

arrived (*and in a completely different branch/division than Mr. Sullivan's*).

20. Despite receiving a 1.4-million-dollar contract to help with wetland determinations, having his budget approximately doubled, and receiving the approval to fill approximately thirty (30) new/vacant employment positions, Mr. Hernandez insisted on piling this full time, GS-12 Wetland Compliance and HEL Specialist position, on top of Mr. Sullivan's full and pre-existing GS-13 Soil Scientist responsibilities outlined in his position description. The *GS-12 Wetland Compliance and HEL Specialist Position Description* is attached as Exhibit "C" and incorporated herein by reference.

21. Mr. Hernandez was aware of Mr. Sullivan's age and permanent disability at this time, yet he persistently insisted on overloading Mr. Sullivan with duties that Mr. Hernandez knew would be impossible to complete. Furthermore, Mr. Sullivan does not have the requisite training to fulfill the duties of this full time GS-12 position, yet Mr. Hernandez insisted Mr. Sullivan take over the duties of this role even though Mr. Sullivan was unqualified to perform said duties. It would have taken approximately five (5) years of training for Mr. Sullivan to have been qualified to independently hold this GS-12 position.[4]

22. This GS-12 Wetland Compliance position also requires extensive travel and physical labor. Despite Mr. Sullivan's permanent disability, Mr. Hernandez insisted Mr. Sullivan travel around the state to all wetland determinations and physically perform the wetland determinations in the field. These duties have never been in Mr. Sullivan's position description, and notably in Florida's history, have always been held by a full-time, capable employee.

23. These full-time GS-12 Wetland Compliance Specialist duties stacked on top of his own existing Position Description duties, and duty as the Florida Training Officer, was an

---

[4] The breakdown of qualifications needed are contained on pages 4 and 5 of Exhibit A.

intentional misassignment of duties. Mr. Hernandez knew Mr. Sullivan would not be able to accommodate all the necessary travel and field work required due to his disabled status, age, lack of qualifications, and own full time job responsibilities (Mr. Sullivan's salary was paid by the Soil and Plant Science Division, not by the State Conservationist's Division).

24. This improper delegation of duties also clearly violated Mr. Sullivan's position description, which states, "Note: Assignment to duties other than those above for a period exceeding 30 days constitutes a misassignment and must be corrected immediately by appropriate Operating Office submitting a Request for Personnel Action to either detail, temporarily promote or permanently assign employee to the appropriate job." See *Mr. Sullivan's Position Description* attached as Exhibit "D" and incorporated herein by reference.

25. Upon reviewing Mr. Sullivan's position description, it's easy to see that his duties are all related to the soils in Florida, which are broken down as 35% Soil Program Manager, 30% Policy Development, 25% Supervision, and 10% NRCS Liaison. Nowhere in Mr. Sullivan's Position Description does it say he "will serve as Wetland Compliance Specialist, including all of the associated responsibilities for the state of Florida."

26. As noted above, Mr. Sullivan satisfactorily performed his job as State Soil Scientist for nearly ten (10) years prior to Mr. Hernandez's arrival with no Complaints or need for reasonable accommodations in relation to his permanent disability, mainly due to the advisory, supervisory, and managerial nature of his position.

27. Despite being underqualified and unable to perform Mr. Hernandez's misassigned duties, Mr. Sullivan applied for reasonable accommodations in an attempt to be compliant with these new herculean tasks that he was being asked to perform.

28. Mr. Sullivan submitted proof of his permanent disability from two medical professionals, outlining that he was not capable of performing the new tasks being asked of him and that reasonable accommodations had to be made. Mr. Sullivan, in accordance with his doctor's recommendations, requested lengthy reasonable accommodations, as his disabilities were never going to improve, but only continue to worsen over time.

29. In response, and notably, with no medical support whatsoever, Defendant, through its agents and employees (including Mr. Hernandez) denied Mr. Sullivan's request, and only offered him four months of not having to perform physical labor. The Defendant had no independent medical examinations conducted on Mr. Sullivan, or ever sought to verify Mr. Sullivan's permanent disability. Instead, Defendant, through its agents and employees (including Mr. Hernandez), simply picked a completely arbitrary number of just four months to not have to perform physical labor. Mr. Hernandez specifically stated to Mr. Sullivan, "Do what you have to do" and get ready to go back to the field, despite knowing of his permanent physical disability.

30. At the end of the four-month accommodation, Mr. Sullivan's disability did not resolve, as predicted by his medical professionals. Instead of continuing his reasonable accommodations or granting him permanent/indefinite accommodations as his medical professionals advised, Defendant, through its agents and employees (including Mr. Hernandez) failed to give Mr. Sullivan an accommodation that would allow him to satisfactory perform his new job duties. Only one additional month was offered. Mr. Sullivan appealed and was granted only until October 1st, 2021, as a final decision. The Defendant clearly had no intention of giving Mr. Sullivan reasonable accommodations to perform his job and had no medical or factual support for doing so.

31. Defendant, through its agents and employees (including Mr. Hernandez), never obtained a single medical opinion or medical examination to support its position. By not allowing Mr. Sullivan a reasonable accommodation to continue to satisfactorily complete his job duties as he had for over 39 years, Mr. Sullivan's 61-year-old person could not physically or even possibly complete his new misappropriated job duties.

32. On top of the aforementioned, in his effort to force Mr. Sullivan out of his position due to his age and disability, Mr. Hernandez repeatedly talked down to Mr. Sullivan and in a disparaging manner due to his age and disability.

33. When Mr. Sullivan brought up the need to hire the wetland specialist position that was vacant on the organizational charge for numerous months, Mr. Hernandez responded disparaging and threateningly, "No you don't, don't you dare, shut the hell up and do your damn job! This is your job now!"

34. When Mr. Sullivan brought up his age, disability and inability to go into the field routinely for field work (which is not in his position description), Mr. Hernandez responded with, "[y]ou support them (the two employees assigned to the field), Kevin. You go to the field and you need the practical training anyway." Mr. Hernandez's obvious lack of regard of the nature of the dangerous field work these soil scientists perform when they enter the field, especially at the age of 61 and with physical disabilities, is troubling to say the least for a person holding the title of State Conservationist, and just further shines a light on Mr. Hernandez's motive for his actions directed towards Mr. Sullivan.

35. In addition to the brief aforementioned facts, for the sake of brevity in this Complaint, Mr. Sullivan incorporates all of his statements and allegations in Exhibit A, Exhibit B,

and the Full Agency Investigation[5] into this Complaint as a factual basis for his claims, and to counter any motion that could be made alleging that Mr. Sullivan failed to state a claim upon which relief could be granted in this Complaint.

36. Unfortunately, after 39 years of loyal service to the NRCS, Mr. Sullivan was forced into an untimely and premature retirement on December 31, 2021, losing pension benefits, wages, salary escalations, and additional income, in addition to suffering non-economic damages, including but not limited to, emotional pain and mental anguish.

## COUNT I
***(Discrimination Based on Disability – Failure to Provide a Reasonable Accommodation- American with Disabilities Act of 1990, as codified, 42 U.S.C. §12101-12117.)***

37. Mr. Sullivan re-alleges paragraphs one (1) through thirty-six (36) of this Complaint as fully set forth herein.

38. Defendant's conduct as outlined above, and as provided in the attached Exhibits and Full Agency Investigation of September 21, 2021, qualified as discrimination against Mr. Sullivan with respect to 42 U.S.C. §12101-12117.

39. Mr. Sullivan had a disability (a physical impairment that substantially limited one or more major life activities, including but not limited to, performing manual tasks, walking, standing, lifting, and/or bending).

40. Mr. Sullivan was a qualified individual.

41. Defendant, by and through its actual and/or apparent agents, servants, and/or employees, knew of Mr. Sullivan's disability.

42. Mr. Sullivan requested an accommodation.

---

[5] Not attached, but in Defendant's possession.

43. If a reasonable accommodation had been provided, that would have allowed Mr. Sullivan to perform the essential functions of the job.

44. Defendant, by and through its actual and/or apparent agents, servants, and/or employees, failed to provide Mr. Sullivan a reasonable accommodation.

45. In essence, the actions of Defendant, by and through its actual and/or apparent agents, servants, and/or employees, which were each condoned and ratified by Defendant, displayed clear discrimination based on a disability in violation of the laws set forth herein.

46. The discrimination complained of herein affected a term, condition, or privilege of Mr. Sullivan's rights under the ADA. The events set forth herein lead, at least in part, to adverse actions against Mr. Sullivan.

47. Defendant's conduct constitutes intentional and willful discrimination based upon a disability in violation of the statutes referenced above.

48. As a direct and proximate result of Defendant's conduct described above, Mr. Sullivan has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life, lost pension benefits/disbursals, non-pecuniary losses, and loss of other benefits. These damages have occurred in the past, are permanent and continuing. Mr. Sullivan is entitled to monetary damages, economic and non-economic damages, injunctive/equitable relief and punitive relief.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

## **COUNT II**
***(Discrimination Based on Disability – Disparate Treatment Claim
American with Disabilities Act of 1990, as codified, 42 U.S.C. §12101-12117.)***

49. Mr. Sullivan re-alleges paragraphs one (1) through thirty-six (36) of this Complaint as fully set forth herein.

50. Defendant's conduct as outlined above, and as provided in the attached Exhibits and Full Agency Investigation of September 21, 2021, qualified as discrimination against Mr. Sullivan with respect to 42 U.S.C. §12101-12117.

51. Mr. Sullivan had a disability (a physical impairment that substantially limited one or more major life activities, including but not limited to, performing manual tasks, walking, standing, lifting, and/or bending).

52. Mr. Sullivan was a qualified individual.

53. Defendant, by and through its actual and/or apparent agents, servants, and/or employees, took adverse employment actions against Mr. Sullivan.

54. Defendant, by and through its actual and/or apparent agents, servants, and/or employees, took that action(s) because of Mr. Sullivan's disability.

55. In essence, the actions of Defendant, by and through its actual and/or apparent agents, servants, and/or employees, which were each condoned and ratified by Defendant, displayed clear discrimination based on a disability in violation of the laws set forth herein.

56. The discrimination complained of herein affected a term, condition, or privilege of Mr. Sullivan s rights under the ADA. The events set forth herein lead, at least in part, to adverse actions against Mr. Sullivan.

57. Defendant's conduct constitutes intentional and willful discrimination based upon a disability in violation of the statutes referenced above.

58. As a direct and proximate result of Defendant's conduct described above, Mr. Sullivan has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life, lost pension benefits/disbursals, non-pecuniary losses, and loss of other benefits. These damages have occurred in the past, are permanent and continuing. Mr. Sullivan is entitled to monetary damages, economic and non-economic damages, injunctive/equitable relief and punitive relief.

## COUNT III
*(Discrimination Based on Age - Age Discrimination in Employment Act of 1967, as codified, 42 U.S.C. §621, et seq.)*

59. Mr. Sullivan re-alleges paragraphs one (1) through thirty-six (36) of this Complaint as fully set forth herein.

60. Defendant's conduct as outlined above, and as provided in the attached Exhibits and Full Agency Investigation of September 21, 2021, qualified as age discrimination against Mr. Sullivan with respect to 42 U.S.C. §621-634.

61. Mr. Sullivan was Defendant's employee (specifically, Mr. Hernandez was Mr. Sullivan's supervisor).

62. Mr. Sullivan was at least 40 years old at the time of the adverse employment actions taken against him as described above and in the attached documents.

63. Defendant, by and through its actual and/or apparent agents, servants, and/or employees, took the aforementioned adverse employment actions against Mr. Sullivan.

64. Similarly situated State Soil Scientists, did not have similar adverse employment actions taken against them.

65. Defendant, by and through its actual and/or apparent agents, servants, and/or

employees, took that action because of Mr. Sullivan's age.

66. In essence, the actions of Defendant, by and through its actual and/or apparent agents, servants, and/or employees, which were each condoned and ratified by Defendant, displayed clear discrimination based on Mr. Sullivan's age in violation of the laws set forth herein.

67. The discrimination complained of herein affected a term, condition, or privilege of Mr. Sullivan's rights under the Age Discrimination in Employment Act of 1967. The events set forth herein lead, at least in part, to adverse actions against Mr. Sullivan.

68. Defendant's conduct constitutes intentional and willful discrimination based upon Mr. Sullivan's age in violation of the statutes referenced above.

69. As a direct and proximate result of Defendant's conduct described above, Mr. Sullivan has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life, lost pension benefits/disbursals, non-pecuniary losses, and loss of other benefits. These damages have occurred in the past, are permanent and continuing. Mr. Sullivan is entitled to monetary damages, economic and non-economic damages, injunctive/equitable relief and punitive relief.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Kevin Sullivan, prays for the following relief against Defendant, Thomas J. Vilsack, Secretary of Agriculture, in his official capacity as Secretary, United States Department of Agriculture:

(a) that process issue and this Court take jurisdiction over the above-captioned matter;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Mr. Sullivan;

(c) enter judgment against Defendant, awarding Mr. Sullivan damages for Defendant's violations of law enumerated herein, in an amount in excess of seventy-five thousand dollars, plus interest and costs of this suit;

(d) enter judgment against Defendant awarding Mr. Sullivan, economic damages, non-economic damages, punitive damages, injunctive/equitable relief, attorney's fees and costs;

(e) award Mr. Sullivan interest where appropriate; and

(f) and for any other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

The Plaintiff, Kevin J. Sullivan, demands a trial by jury in the above-captioned matter on all issues so triable.

Respectfully submitted:

THE VALENTE LAW GROUP

\_\_\_/s/_____
Cole J. Sullivan, Esq.
Florida Bar: 106202
2200 Defense Hwy., Ste. 301
Crofton, Maryland 21114
410-451-1777
csullivan@valentelawgroup.com
Counsel for Plaintiff